UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                               Case No. 18-cr-20555

vs.                                             HON. MARK A. GOLDSMITH

NATHANIEL BLAND,

        Defendant.
_____/

## ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS (Dkt. 21)

Defendant Nathaniel Bland filed a motion to suppress (Dkt. 21) seeking to exclude items recovered during a search of 2858 18th Street, Apartment 2C, in Detroit. Bland argues that the warrant was invalid because the affidavit supporting it failed to establish probable cause and the good-faith exception does not apply. The Government filed a response (Dkt. 24), and oral argument was held on October 30, 2018. For the reasons set forth below, the Court denies Bland's motion.

## I. BACKGROUND

The motion to suppress seeks to exclude evidence seized from a search executed at 2858 18th Street, Apartment 2C, in Detroit. Ostensibly, the search was prompted by Bland's posting on social media photographs of himself in possession of what appear to be real firearms. Because he is a convicted felon, Bland is prohibited from possessing firearms. Dianna Napier Affidavit ¶ 11 (Dkt. 24-1). The photographs of Bland in possession of the firearms were uploaded to his Instagram account on July 2, 2018. Id. ¶¶ 12 & 13. Further, an FBI source of information reported that, during June and July of 2018, the source personally observed Bland in possession of firearms on multiple occasions. Id. ¶ 10. Task Force Officer ("TFO") Dianna Napier obtained the warrant on July 26, 2018 (Dkt. 24-1).

The Affidavit established that Bland resided at the targeted location. According to the Michigan Department of Corrections, Bland reported the 18th Street address as his, and, on July, 25, 2018, a Michigan Department of Correction probation agent conducted a home check on Bland at that residence. Napier Aff. ¶ 15.

TFO Napier opined, based on her training and experience, that individuals who illegally possess firearms commonly store the instrumentalities of their crimes, in this case firearms, at a secure location such as their residence or their vehicles. Id. ¶ 20. TFO Napier has nine years of law enforcement experience, which includes investigating firearm offenses. Id. ¶ 1.

During the execution of the search warrant, law enforcement officers located two firearms and ammunition.

## II. ANALYSIS

Bland seeks to suppress the evidence seized from the execution of the search warrant. He argues that the affidavit lacks probable cause, because it fails to establish a sufficient nexus between the crime Bland was suspected of committing—felon in possession of a firearms—and his residence. The Court disagrees.

An issuing judge may find probable cause to authorize a search warrant when "there is a fair probability that contraband or evidence of a crime will be found in a particular place." United States v. Laughton, 409 F.3d 744, 747 (6th Cir. 2005) (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)). To make this determination, the issuing judge must undertake a "practical, common sense" evaluation of "all of the circumstances set forth in the affidavit." Id. A magistrate judge's probable cause finding is afforded "great deference" and should be reversed only where the warrant was issued "arbitrarily." United States v. Miller, 314 F.3d 265, 268 (6th Cir. 2002) (citing United States v. Allen, 211 F3d. 970, 973 (6th Cir. 2000) (en banc)).

Here, the warrant affidavit set forth sufficient facts to permit the magistrate judge to infer a link between the firearms and Bland's residence. Law enforcement was investigating Bland's

2

illegal possession of firearms. With substantial evidence that 2858 18th Street, Apartment 2C was in fact Bland's residence, see Napier Aff. ¶ 15, TFO Napier concluded—based on her training and experience investigating firearms violations as a police officer for nine years—that Bland likely kept the firearms in his residence, id. ¶ 20. This was a reasonable and legally permissible inference to draw:The justification for allowing a search of a person's residence when that person is suspected of criminal activity is the common-sense realization that one tends to conceal fruits and instrumentalities of a crime in a place to which easy access may be had and in which privacy is nevertheless maintained. In normal situations, few places are more convenient than one's residence for use in planning criminal activities and hiding fruits of a crime. United States v. Green, 634 F.2d 222, 226 (5th. Cir. 1981).

Accordingly, "it is reasonable to suppose that some criminals store evidence of their crimes in their homes, even though no criminal activity or contraband is observed there." United States v. Williams, 544 F.3d 683, 686-87 (6th Cir. 2008). In other words, while obviously helpful to the probable cause determination, "there need not be an allegation that the illegal activity occurred at the location to be searched. . . ." United States v. Kapordelis, 569 F.3d 1291, 1310 (11th Cir. 2009).

Instead, a magistrate may infer a nexus between a suspect and his residence, depending on "the type of crime being investigated, the nature of things to be seized, the extent of an opportunity to conceal the evidence elsewhere and normal inferences that may be drawn as to likely hiding places." United States v. Savoca, 761 F.2d 292, 298 (6th Cir. 1985); see also United States v. Hodge, 246 F.3d 301, 305-306 (3d Cir. 2001) (noting that a court is entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense).

Here, the crime being investigated was felon in possession of a firearm. This type of crime is not a one-time occurrence, but a continuous and ongoing offense. See United States v. Jones,

3

533 F.2d 1387, 1391 (6th Cir. 1976) ("Possession is a course of conduct, not an act . . . ."). Felon in possession of a firearm is "a continuing offense that ceases only when the felon relinquishes possession." United States v. Goodwin, 552 Fed. App'x. 541, 545 (6th Cir. 2014).

The nature of the items to be seized (firearms) also supports the probable cause determination. Unlike controlled substances, firearms are not perishable, quickly consumed, or readily destroyed, and do not lend themselves to rapid disposition; instead, "firearms are durable goods and might well be expected to remain in a criminal's possession for a long period of time." United States v. Goodwin, 552 Fed. App'x. 541, 544, (6th Cir. 2014) (quoting United States v. Pritchett, 40 Fed. App'x. 901, 905-906 (6th Cir. 2002)). Further, since felons are unable to obtain firearms through legitimate business dealings, firearms in possession of felons have enduring utility.

Finally, the magistrate judge was not left to her own to draw the reasonable inference that it was likely that Bland kept the firearms at his residence; rather, based on her training and experience, TFO Napier, who possessed nine years of law enforcement experience, which included investigating firearm offenses, opined that individuals who illegally possess firearms commonly store them at a secure location such as their residence. Moreover, Bland's connection to the subject residence was not tenuous. He reported this address to his probation officer as where he lives, and his probation officer conducted a home check on Bland at this location.

The Sixth Circuit was faced with a similar scenario in United States v. Vanderweele, 545 Fed. App'x. 465 (6th Cir. 2013). In that case, Vanderweele asserted that there was an insufficient nexus between his possession of a silencer at a motorcycle club and his home, because the informant only saw him with the silencer at the motorcycle club four to five months earlier. Therefore, the defendant argued, there was no connection between the silencer and his residence. The Sixth Circuit disagreed, noting that the affiant explained that, based on his training and experience, firearms, ammunition, and related items are commonly stored within the owner or

4

possessor's dwelling, and that the affidavit stated that individuals who own guns keep them at their homes. Id. at 469.

Under the totality of the circumstances, the magistrate judge could have reasonably inferred that Bland kept the firearms depicted in the photograph at his residence. See id.; see also Williams, 544 F.3d at 688 ("In making this holding, we join other circuits which have held, in cases involving a variety of suspected crimes, that an issuing judge may infer that a criminal suspect keeps the "instrumentalities and fruits" of his crime in his residence."); United States v. O'Conner, 723 Fed. App'x. 302, 310 (6th Cir. 2018) ("the issuing magistrate could have reasonably inferred that O'Conner was keeping the weapon either in the rented car or at the residence where the car was seen parked and which was listed as his residence . . . .").

Even if the probable cause in the Affidavit was lacking, the good-faith exception of United States v. Leon, 468 U.S. 897 (1984) would apply. Under Leon, when an affidavit supporting a search warrant fails to establish probable cause, good-faith reliance on the warrant by law enforcement officers will bar application of the exclusionary rule to the evidence seized. Id. at 922. The Leon Court explained that when an officer relies on a search warrant later invalidated, evidence obtained from the search is admissible unless reasonable officers would not have believed the warrant constitutionally permissible. Id. Under such circumstances, "any benefit derived from excluding evidence does not justify the substantial costs of exclusion." United States v. McCoy, 905 F.3d 409, 416 (6th Cir. 2018) (citing Leon, 468 U.S. at 922).

To determine whether the Leon good-faith exception applies, a court must decide "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." Leon 468 U.S. at 922 n.23. For an officer's reliance on a warrant to have been reasonable, the application must have provided "a minimally sufficient nexus between the illegal activity and the place to be searched." United States v. Brown, 828 F.3d 375, 385 (6th Cir. 2016) (citations omitted). The affidavit need not establish a "substantial basis," only "some

5

connection, regardless of how remote it may have been—some modicum of evidence, however slight—between the criminal activity at issue and the place to be searched." United States v. White, 874 F.3d 490, 497 (6th Cir. 2017) (citation and internal quotations omitted). Further, "reasonable inferences that are not sufficient to sustain probable cause in the first place may suffice to save the ensuing search as objectively reasonable." Id. at 500.

In this case, if not sufficient to establish probable case, the inference that criminals commonly store evidence of their crimes in their homes, even though no criminal activity or contraband is observed there, provides the slight modicum of evidence necessary to for the good-faith exception to apply. See Williams, 544 F.3d at 688; O'Conner, 723 Fed. App'x. 310; see also United States v. Sneed, 385 Fed. App'x. 551, 559–560, (6th Cir. 2010) ("[W]e believe that the good faith exception applies here. To begin with, the court has noted that reasonably well trained officers may infer a nexus between a place to be searched and items sought, even when the affidavit fails to establish probable cause."). In light of this framework, the affidavit in this case was not so lacking in indicia of probable cause as to render it arbitrary.

Courts have applied the good faith exception to warrants supported by far less information than that set forth in this case. For example, in United States v. Schultz, 14 F.3d 1093 (6th Cir. 1994), following an investigation of illegal drug transactions, the affiant-officer obtained a search warrant for the defendant's safe deposit boxes. However, the officer possessed little more than a hunch that evidence of the crime would be found there. Id. at 1097–1098. Nevertheless, the court did not suppress the evidence from the warrant. "But we cannot say that this warrant was 'so lacking' . . . . Officer Ideker certainly had probable cause to believe that Schultz had committed a crime. Moreover, although we have held that his 'training and experience' were not sufficient to establish a nexus of probable cause between that crime and the safe deposit boxes, the connection was not so remote as to trip on the 'so lacking' hurdle.'" Id. at 1098. Like Shultz, the good faith exception would apply in the instant case as well.

Finally, Bland claims that the good faith exception should not apply in this case because the warrant was obtained in bad faith. However, Bland offers no evidence in support of this claim, and it is belied by the facts contained in the Affidavit. Napier Aff. ¶ 13 (Bland—a convicted felon—posting on social media photographs of himself in possession of two firearms). Only when law enforcement officials operate in deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights will the heavy toll of suppression be exacted. Davis v. United States, 564 U.S. 229, 237-38 (2011). There is no evidence of such conduct by law enforcement here. The good-faith exception, therefore, applies.

### III. CONCLUSION

For the reasons stated above, the Court DENIES Bland's motion to suppress (Dkt. 21).

SO ORDERED.

Dated: November 26, 2018              s/Mark A. Goldsmith
   Detroit, Michigan                 MARK A. GOLDSMITH
                                              United States District Judge

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on November 26, 2018.

                                                               s/Karri Sandusky
                                                               Case Manager